UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80166-CR-RUIZ/REINHART

UNITED STATES OF AMERICA

vs.

TIFFANY LORRAINE CANDOFF,

Defendant.
_____/

ACKNOWLEDGMENT OF OFFENSE ELEMENTS AND STIPULATION AS TO
FACTUAL BASIS FOR GUILTY PLEA

I, TIFFANY LORRAINE CANDOFF, agree that the facts set forth below ~~are true and accurate and~~ that the United States could prove these facts against me at trial. I am pleading guilty to all three counts in the indictment charging me with: Count 1 - conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846; Count 2 - attempt to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846; and Count 3 - attempt to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846.

## NATURE OF THE CHARGES

I am aware of and understand the nature of the charge to which I am pleading guilty. I have discussed with my attorney the charges and what the prosecutor must prove to convict me.

**Count 1 - Conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846**

I understand that the United States must prove the following elements of the offense beyond a reasonable doubt:

First:          Two or more people in some way agreed to try to accomplish a
                shared and unlawful plan to possess cocaine;

Second: The defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third: The object of the unlawful plan was to possess with the intent to distribute 500 grams or more of cocaine.

**Counts 2 and 3 - Attempt to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846.**

The Defendant can be found guilty of an *attempt* to possess with intent to distribute 500 grams or more of cocaine only if both of the following facts are proved beyond a reasonable doubt:

First: That the defendant knowingly intended to commit the crime of possession with intent to distribute 500 grams or more of cocaine; and

Second: The defendant's intent was strongly corroborated by her taking a substantial step toward committing the crime.

A "substantial step" is an important action leading up to committing an offense – not just an inconsequential act. It must be more than simply preparing. It must be an act that would normally result in committing the offense.

I understand that the United States must prove the following elements of the offense beyond a reasonable doubt to prove the crime of possession with intent to distribute 500 grams or more of cocaine:

First: The defendant knowingly possessed 500 grams or more of cocaine; and

Second: The defendant intended to distribute the 500 grams or more of cocaine.

### STIPULATED FACTS

On or about September 30, 2021, the United States Postal Inspection Service (USPIS) was conducting proactive searches on postal databases and identified a subject parcel bearing common characteristics to parcels containing narcotics. The subject parcel was addressed to "Jeffers Albert" at an Airbnb being rented in West Palm Beach. The defendant was residing in the Airbnb with an

2

individual by the name of Albert Jeffers. The name on the return address was not associated with the California address included on the parcel. Pursuant to a federal search warrant, agents opened the parcel and discovered a white powdery substance which was later determined to be approximately 999.7 grams of cocaine.

On October 4, 2021, at approximately 2:00 p.m., agents from the USPIS, Drug Enforcement Administration (DEA), Homeland Security Investigation (HSI), West Palm Beach Police Department (WPBPD), and Florida Highway Patrol (FHP) conducted a controlled delivery of the subject parcel (containing a substance appearing to be cocaine– referred to as "sham") to the Airbnb in West Palm Beach. The subject parcel contained a GPS/signaling device. The outer part of the subject parcel was a brown ready post box, which contained a white USPS box. The subject parcel was delivered by USPIS agent acting in an undercover (UC) capacity. The subject parcel was placed to the right of the front door.

The subject parcel sat stationary until approximately 7:00 p.m. when agents noticed movement of the subject parcel based on the GPS placed inside the parcel. The GPS showed the subject parcel move to the driveway from the front of the house. After seeing the GPS movement, agents drove past the residence and observed the open driver's door of a blue Volkswagen Jetta known to be owned by the defendant. At approximately 7:15 p.m., agents observed a tan/gold Toyota Prius arrive at the Airbnb and park. Agents observed the silhouette of an individual walk to the Prius and contact the driver of the Toyota Prius. The individual who approached the Prius walked away from the vehicle and back towards the residence. The Toyota Prius left the area and agents conducted surveillance of the vehicle. Eventually, a trooper from the Florida Highway Patrol conducted an investigative traffic stop of the vehicle and located the parcel containing the sham and GPS.

Agents spoke to the driver of the Prius who identified himself as a Lyft driver (hereinafter

CW). He informed agents that he had been conducting a Lyft ride to deliver a package for an individual identified through the Lyft application as "Tiffany." The photograph appearing on the application was a female who was positively identified by agents as the defendant. The Lyft application showed messages between the CW and the defendant. The defendant informed the CW, "I need a package dropped off to my friend its 110 mils north is that ok?" The CW agreed to this and accepted the ride. The application showed he was currently on a Lyft trip for the defendant with a pickup location at the Airbnb in West Palm Beach, and a specific destination in Melbourne, Florida. The CW told agents the female provided him with the package. During the traffic stop, the CW received messages through the Lyft application from the defendant asking if everything was okay. With permission from the CW, a USPIS agent (hereinafter UC) replied that he had a flat tire and was waiting for AAA.

The following day on October 5, 2021, the USPIS UC texted the defendant at a phone number agents knew belong to the defendant. The UC explained that he had the subject parcel and wanted to return it. Thereafter, the UC received a reply text from a number later identified as a phone number used by the defendant. The UC and the defendant continued to communicate through text messages and recorded telephone calls. The UC told the defendant he was the son of the Lyft driver, he had her package, and he wanted to return it. The UC and the defendant agreed to arrange a transfer of the subject parcel.

On October 7, 2021, the UC exchanged a series of text messages with the defendant, and she agreed to meet the UC at a business location on Okeechobee Boulevard, West Palm Beach, Florida, to receive the subject parcel.

The defendant arrived in the shopping center parking lot and contacted the UC who was equipped with an audio and video recording device to capture the exchange. The UC apologized and the defendant replied, "I'm sorry." The UC told the defendant his dad opened the box and kind

4

of saw what is inside. The defendant replied with "uh hu." The UC told the defendant he saw what was inside, and saw it looked like some "dope type shit, like Pablo Escobar," and that his dad didn't want any issues with anyone. The defendant replied, "Oh no no, it's okay." The UC told the defendant he just wanted her to know since his dad's tag was on the Lyft. The defendant replied that they were good. The UC told the defendant that his dad was freaking out which is why he (UC) was handling it. The UC retrieved the package from the UC vehicle and placed it on the trunk of the UC vehicle. The defendant provided the UC with $110 United States Currency and told the UC "Thank you."

The defendant took possession of the subject parcel from the trunk of the UC vehicle and walked to her vehicle. Agents conducted surveillance of the defendant after the transaction. During the surveillance, she drove through residential neighborhoods and did not stop anywhere or contact anyone. At approximately 2:54 pm, after taking custody of the parcel from the UC, the defendant texted the UC, "Did you or your dad say anything to anyone just so im aware." The UC replied to the defendant, "No he only showed me. Just be careful that shit in there is could fuck u up."

Agents followed the defendant to the Tire Kingdom parking lot located at 1544 Palm Beach Lakes Boulevard, West Palm Beach, Florida. She parked and exited her vehicle, opened the trunk of her vehicle, and retrieved a black bag. Upon reentering the vehicle, the subject parcel showed movement on the GPS/signaling device. Thereafter, agents observed the defendant exit her vehicle and walk to the dumpster of the Tire Kingdom located at 1544 Palm Beach Lakes Boulevard. Agents observed her discard the brown ready post box. The brown ready post box was later recovered by agents and found to be the original ready post box containing the subject parcel.

After she returned to her vehicle, agents received an alert notification which let agents know that the white USPS parcel containing the sham cocaine and GPS/signaling device had been opened. Based on this alert notification, agents approached the vehicle and contacted the

defendant. At that time, agents observed the opened white USPS parcel containing sham cocaine.

Agents who were stationed at the Airbnb contacted the owner of the Airbnb and the renter of the Airbnb named Albert Jeffers. The Airbnb owner said the rental contract with Jeffers had expired days before and that he was evicting them from the residence. Albert Jeffers said that he had no idea the defendant was trafficking drugs, he only met her recently and he rented the Airbnb in his name because the defendant told him she didn't have sufficient identification to do the rental. The defendant gave him money for the rental.

Date: 4/27/2022    By: _____
                       JUAN ANTONIO GONZALEZ
                       UNITED STATES ATTORNEY
                       DANIEL E. FUNK
                       ASSISTANT UNITED STATES ATTORNEY

Date: April 25, 2022  By: _____
                          ROBERT STICKNEY
                          ATTORNEY FOR DEFENDANT

Date: 4/25/22         By: _____
                          TIFFANY LORRAINE CANDOFF
                          DEFENDANT